I will call case 14-2508, In re, Timothy Bartlett. Mr. Bukite. Thank you, Judge Rovner. May it please the court. My name is Brad Bukite and I represent the appellants Tim and Kim Bartlett. The sole issue presented in the appeal today is whether a creditor can use Rule 60b-4 of the Federal Rules of Slow Procedure or Section 362 of the Bankruptcy Code to collaterally attack a confirmed Chapter 13 plan on grounds that could have been raised in a direct appeal and more than two years into the plan. And I think the the holdings of this court as well as the Supreme Court say that the answer is no on both counts. Mr. Bartlett, what is the current status of the property? Can you answer, Judge? Who owns it? The title owner is High Q Farms. Still? Correct. There's been no transfer of title ownership to the Bartlett's. The debtors do not seem to acknowledge that they co-signed the mortgage and so they were legally obligated to make payments once the corporation stopped doing so. Does Indiana law create an equitable interest in property under those circumstances? Judge, I think as I pointed out in our brief I was unable to find any Indiana cases with facts analogous to ours. The only case I found was the Linderman case which I believe is out of Western District of Washington from 1982. Right. Right. I do not find any Indiana cases with analogous facts. Well those are for equitable mortgages. Usually when someone's purchasing a time and they've paid into it for maybe an extraordinary time period and that's when the court's found well under those circumstances you can't just take the whole property back and there would be an equitable mortgage but I'm not sure it applies here. Well what I think you're describing Judge is what I would call a land contract. Pardon me? What I think you're describing is what I would refer to as a land contract. Yeah. And that's you're right those are where most of those cases come down. Those aren't the facts here that that's clear but I think as we pointed out in the briefs it requires some explanation. When the corporation went through a Chapter 7 bankruptcy I refer to it as effective dissolution. That's sort of a term of art because there's really no other reason to put a corporation through a 7 but for to put the world on notice the corporation's out of business. Did you say effective dissolution? Effective dissolution. Correct Judge. Okay. Okay. Is that a term of art you've encountered elsewhere or is it your own term of art? I think it's a term of art within the I guess what I'd call the the Southern District of Indiana bankruptcy bar Judge. There's really no other reason again to put it to put a corporation through a Chapter 7 but for to give all creditors notice the corporation's out of business. At the same time you file your final tax returns you don't keep filing with the Secretary of State then after time the Secretary of State you know you know the bankruptcy court dismissed the case because the debtors were 11 months behind on their payments. Does that dismissal move the issue raised here? If not what would be the effect of the dismissal? Well Judge the case was reinstated and as I understand it the debtors are now current. Does that answer your question? So go ahead. I'm not sure. Let me ask you about the Bartlett's Schedule A lists this property as one of their assets saying they have as near as I can tell the full fair market value interest right? It does appear that way Judge. Why isn't that tantamount to fraud? I don't think it's fraud because A it was never raised by anybody in the bankruptcy court. I don't know. I mean I'm asking that's because you just told me the title is in the corporation. It is at the at the time the schedules were filed. The corporation that was deeply in debt. Deeply in debt at the time the schedules were filed it did not represent the Bartlett's so I cannot with any certainty say why their counsel at that time scheduled their interest as a joint tenancy in the property. Well the fact the court had no jurisdiction over that property at all. Excuse me Judge? The court had no jurisdiction over that property. It was not part of the estate and they just referred to they owned it just because they really wanted to but they didn't. If the court finds that the Bartlett's had no equitable interest in the property under 541 which is again broad. Equitable interest. That's correct but that that falls within the broad scope of 541. If the court finds that there's no equitable interest under 541 yes I would say that the property was not property of the state but that does not change the fact Judge that lack of subject matter jurisdiction subject to very rare exceptions says the Supreme Court and this court is not permissible it's not grounds for a collateral attack on a confirmed It's not okay for a collateral attack by somebody who appears and litigates right? What what role did Fifth Third play in the bankruptcy court here before just just originally? They didn't do anything Judge. They ignored the proceedings. Yeah okay and we said in for example in the personal jurisdiction if you don't if you're a defendant or a part and you don't think the court has jurisdiction over you you're free to ignore it and you can then bring that collateral attack. Why is that not applicable here? Well I don't think I think if the Supreme Court and Travelers Indemnity versus Bailey sort of clarify that Judge. I understand the decision to file us is based upon personal jurisdiction and that that case quoted Insurance Corp of Ireland for that proposition but if you go back and look at Insurance Corp of Ireland it doesn't say that a defendant is free to ignore the proceedings risk a default judgment and then collaterally attack the judgment on subject matter jurisdictional grounds. It says that with respect to personal jurisdiction and that if if you look at the Travelers Indemnity case Judge I think Justice Souter writing for the majority of the court was very clear that lack of subject matter jurisdiction standing alone does not make a confirmation order in that case in a chapter 11 it actually had to make the injunction but it doesn't make it susceptible to collateral attack. I mean I think the idea is that race judicata trumps a creditor's unwillingness to participate in the underlying bankruptcy. This becomes a great way to steal property right? It does I understand the question Judge but it also becomes a great way for creditors to ignore bankruptcy proceedings then come in after a debtor gets discharged and move for relief from the stay on grounds that could have been presented in the direct appeal. So I know these are it's surely pretty unusual for debtors to claim an asset they don't actually own. I would hope so. Me too. Yeah I mean I would hope so but I hope it's equally unusual for a creditor judge to ignore proceedings where its interests are potentially affected and then come in to you know almost two and a half years after plans confirmed to argue grounds that could have been raised in direct appeal. What could they do with the mortgage? What do you mean Judge? I mean you've got a note in default and a mortgage on the property so you have a they have a first lien on the property I presume. Can they foreclose while this is dragging on? No I mean I think that I suppose they could if they didn't seek permission from the Bankruptcy Court and I think there's a footnote in Fifth Third's brief that addresses that. They probably could have initiated proceedings against the property and the corporation on the note during the Bartlett's personal bankruptcy and foreclosed on it but that never happened it still hasn't happened even after the state relief was granted Judge. Well they're guarantors but they don't have any money so that's not really the issue. They don't have any money at all and I see I'm in my rebuttal time. Well could the bank just file a foreclosure action against the corporation tomorrow? I suppose they could Judge. I don't think there's anything to prevent it but again the corporation's dissolved there's nothing there I don't know what it's worth but for the property. For the title of property. That's right. That's what they want. It is what they want. I mean I'm frankly not sure whether 60B4 or the lift of the stay is the better procedural vehicle here. I would submit Judge that both are both are part by the passage of time and in Fifth Third's unwillingness to participate in the bankruptcy proceeding. Thank you. Thank you. Good morning Mr. Stattman. Good morning your honors. Alan Stattman on behalf of Fifth Third Bank and I think that there has to be something made clear out of the starting gate. Fifth Third had no obligation to participate in this bankruptcy. Fifth Third had a mortgage on a corporate piece of property that was not a party to this particular bankruptcy. These two individuals in Chapter 13 were guarantors of that debt. They were not owners. As such they had a contractual obligation under their guarantee. They can't change that contractual because they made payments that they were required to make under a guarantee. So Fifth Third gets notice that the Bartlett's have filed bankruptcy. Well Fifth Third has no collateral in the Bartlett's name. They have a guarantee. And so there is nothing for Fifth Third to participate in other than to file a $40,000 proof of claim on behalf of the bank and not even their unsecured share. So even under their argument there would have been a $40,000 secured portion and a $180,000 unsecured portion but that's not what they did. So what they did was either inadvertently or intentionally claim they were the owners. So the bank would look at the schedules and see oh it's a piece of property that they have joint tenancy because that's what they said under oath. And so that's not property the bank had as collateral. The property the bank had as collateral was corporate property. Out of an abundance of caution, request relief from stay. And if you look at the bankruptcy court record the judge even says to counsel if I didn't have jurisdiction over the property I didn't have Well I can use an example. I have bad news for the three of you today. I went and paid your real estate taxes and I filed bankruptcy an hour ago and I have now put your homes as my ownership interest. I now own your homes because I put it in the plan. Stop giving the lawyers ideas in the courtroom. She has a big house. So this is what I would call a cascading comedy of absurdities. We're going to start with the fact that Indiana law requires this corporation to satisfy all its debt before it moves property to its shareholders. That didn't happen. We're then going to allow the debtors and their schedules to list themselves as owners when they're not and swear under that they are the owners. Then we're going to let them put together a plan that crams the bank down to $40,000 on property they have declared they've owned. How much is it worth? What's that? How much is it worth without the cram down or something? I don't know. Do they have any idea? No I don't know at this point. Well I mean they're going to have to, if they foreclose they've bid in the debt which doesn't do them any good. There's not a value there unless somebody else wants it. Well at the point that Fifth Third decides to foreclose it'll either get bid in by the bank or there'll be other bidders or it'll be a no sale and they'll try again. Or maybe the Bartlets will have a family member come and bid it. They've been living in the property during all this period of time so I would even argue that their equities are out balanced by the fact that they've lived in it virtually for free other than the few thousand dollar payments that have come through a plan. They point out that Fifth Third accepted payments from them under the confirmed plan. Well we have a guarantee and they have a contractual obligation. My question would then be how should we treat the bank's acceptance of those payments? Does the bank plan on disgorging those payments to the estate? And if not how would that be fair to the other creditors? Well I don't think that we're obligated to disgorge the payments because they're payments on their guarantee. The problem with this plan is they never set up this equitable argument in the first place. What they did was claim they owned the property, crammed it down to a debt and there was almost a year they didn't pay anybody and then they reinstated their case and tried to bring it current and counsel says they have. But the point is the plan never laid out what counsel and the clients wish the plan was today. It didn't say that the plan is we have an equitable interest and the case they rely on requires them to prove what that equitable interest is. They've never even disclosed in any evidentiary proceeding or even in response to the relief from state we paid $10,000. We have a $10,000 ownership interest which they couldn't have because of Indiana law. But if they did that at least they're coming a little closer to having someone be able to look at their plan and go wait a minute they're trying to steal our property. Does this have to go back to the bankruptcy court? Does this go back to the bankruptcy court? This whole issue because for them to declare there's no interest or something. Well I don't think they have to declare there was no interest. We could have foreclosed on the property without using an abundance of caution to go get a relief from stay. So the question really becomes whether you're going to reverse the trial court, declare that relief from stay was not appropriate, that subject matter jurisdiction was somehow waived even though their schedules under oath were not correct and they never even That seems absurd given the state of the record where subject matter jurisdiction is not waivable and we did not participate in the process where we would have had to have had an opportunity to fully litigate that. The process we participated in. Are you saying that you did not have notice of the proposed plan or an opportunity to object? We had notice that guarantors filed a chapter 13 bankruptcy. In looking at our records there would be no evidence of real estate involved in that because these two people had a contractual obligation to guarantee a debt. So you look further into their schedules and they say they have property they own in their own names. The bank then looks and sees they have no mortgage on property in their own names. Thus the potential for the fraud or a clear abuse and an attempt to steal If I go out and make payments on the Willis Center today and then I file bankruptcy and say I have an equitable interest and I list the title of the Willis Center in Allen Statman individually, but I send the copy of my bankruptcy to the Willis Center, they're going to look at it like this has nothing to do with us because I've masked all that in how I've disclosed it. And the question becomes adequate notice. Not just you sent me a piece of paper and then the obligation is on me to go do a full investigation to uncover your fraud or your glaring error. The fact is I should be able to accept the bankruptcy schedules on their face that someone swore under oath that they owned property that I don't have a mortgage on. So I think for all those reasons and a very well-written opinion by the district court, the district court's opinion should be affirmed. Thank you. Thank you very much. Mr. Buchheit, I don't know how much time you have left, but go ahead. I won't take it all, Judge, either way. You have five minutes. That's all right. I won't need that, Judge. I appreciate it, though. A couple of things. With respect to subject matter jurisdiction ever being waivable, that's true in the same proceeding, right? I mean, the court can, sua sponte, even at the highest level of review, go back and question whether the original court, the lower court, has subject matter jurisdiction. Again, I think the Supreme Court in Traveler's Indemnity v. Bailey as well as Contract v. Ryan both say and both make clear that you cannot tunnel back on a collateral attack to the originating court's subject matter jurisdiction. It's just improper. So long as respondents or those in privity with them were parties to the bankruptcy proceeding and were given a fair chance to challenge the bankruptcy court's subject matter jurisdiction. That's right. That's what Traveler says. That's what Traveler says. And I don't think Fifth Third has the right to ignore the proceedings. Is it a fair chance if you falsely described the property and its title? Well, that plays into the second point I want to make, Judge. It's one thing to say that Fifth Third didn't have notice, which is new to me. That's never been claimed before. But it shows that they did have notice, and at least it was effective when the Bartlett's filed for bankruptcy a first time in 2009, is that the property was scheduled the exact same way, as far as I know, and Fifth Third came in and sought relief from the automatic stay. So it's one thing to say that they didn't have notice of it and they didn't have a duty to do this. I don't know what happened here, why they didn't. I don't know if they chose not to, if something fell through the cracks. But to say that they couldn't have objected to the treatment of the property the way the plan proposed to do it is a great challenge. Could you address more directly the problem that counsel for the bank raised about scheduling the property incorrectly? The bank checks its records, says they don't own any property that we have a mortgage on. Why aren't they entitled to ignore it? Again, Judge, I don't know that they would or would not be, but all I can say is they didn't ignore it in a Bartlett's previous bankruptcy. To say that there was no connection between the Bartlett's and the corporation, and thus no connection between the Bartlett's and the property, it's a bit of a stretch to say that a two-person corporation has no connection to the property. They're still living in the property? The property at issue here, Judge, isn't a residential mortgage. It's a small outbuilding. It's essentially a barn that Tim Bartlett practiced equine veterinary medicine in before he had a massive stroke in 2011. To the extent that there's no evidence in the record of the amount of the payments that the Bartlett's made toward the debt owed to Fifth Third on the property, I'll fall on the sword there. What's the status of Chapter 13? What's that? The Chapter 13. Right. They're still paying on that? Yeah, they're still paying on 13. Is this included in it? Yes, this is. So we're still at a $40,000 cram down, and they're paying on that? That's what the plan called for, and they're making planned payments, Judge. But let me back up. I'll fall on that sword. Like I just mentioned, Tim Bartlett had a massive stroke in 2011. At the time the motion for relief was filed and the hearing on it was held, I fully suspect the Bartlett's to be there to be able to call to testify. They didn't. I made the decision to go forward without them there. So to the extent there's no evidence in the record of the extent of their payments, I'll go ahead and take the blame for that. So that's all I have, Judge, unless there's further questions. Gosh, thank you both very much. Thank you. And the case will be taken under advisement. Thank you very much.